UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEWEL BROWN | ] | NO. 3:02CV0223 (CFD) |
|     Plaintiff, | ] | |
| | ] | |
| v. | ] | |
| | ] | |
| COMMISSION ON HUMAN RIGHTS | ] | |
| AND OPPORTUNITIES, ET AL. | ] | |
|     Defendants. | ] | MARCH 24, 2005 |

## MEMORANDUM OF LAW IN SUPPORT
## OF PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

Pursuant to the court's authorization, the defendants have filed this motion for partial summary judgment on procedural issues to clear up the pleadings in the above case. Concurrent with this motion, the defendants have submitted a Rule 56(a)(1) Statement of Facts supporting a number of procedural defenses that bar many of the plaintiff's claims, such as the failure to serve several individual defendants in their personal capacities. The defendants also submit that the plaintiff's Title VII claim against the Connecticut Commission on Human Rights & Opportunities ("CHRO") is barred because he did not file it within 90 days of his receipt of the Right to Sue letter from the EEOC. This partial summary judgment motion does not reach the merits of the plaintiff's claims. Those will be dealt with through a later Motion for Summary Judgment after discovery is completed.

STANDARD OF REVIEW

A motion for summary judgment is granted when there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American Int'l Group, Inc. v. London American Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Nonetheless, "the statutory purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.) cert. denied, 474 U.S. 829 (1985).

This is not to say that de minimis evidence is sufficient to overcome summary judgment.   Speaking to this issue in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), the United States Supreme Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact finder could conclude that the action was discriminatory. **For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.**

Id. at 148. (emphasis added).

<u>ARGUMENTS</u>

**THE CLAIMS AGAINST BARBARA WATERS AND MARC RYAN IN THEIR INDIVDIUAL CAPACITIES MUST BE DISMISSED FOR LACK OF SERVICE OF PROCESS.**

Defendants Waters and Ryan contest personal jurisdiction under Rule 12(b)(5) for the lack of proper service of process. The summons and complaint were not served on them. The Second Circuit has held that a motion to dismiss for lack of personal jurisdiction must be granted if the plaintiff fails to serve a copy of the summons and complaint upon the defendants. <u>Schaeffer v. Village of Ossining</u>, 58 F.3d 48, 49-50 (2d Cir. 1995). Federal Rule 4(e) provides that service upon an individual may be made by in-hand service, abode service, by request to waive, or pursuant to the law of the state in which the district is located. See, Fed. R. Civ. P. 4(e) and (f). In Connecticut, service may be made on an individual by in-hand service or abode service. Conn. Gen. Stat. § 52-57(a).

In the present case, the return of service filed by the marshal in this case indicates that service was effectuated against these two defendants by leaving a copy at the state agency office where these defendants worked, but with a person OTHER THAN the defendants. For defendant Barbara Waters the summons and Substituted Complaint was left with a staff attorney at the Department of Administrative Services. (Facts, ¶ 12). Similarly, the summons and complaint for Marc Ryan, (who was Secretary of OPM) was not delivered to him personally. At the Office of Policy and Management the summons was accepted by Deputy Secretary Anne Gnazzo. (Facts, ¶ 15). In neither instance did Ms. Waters or Mr. Ryan authorize the acceptance of service upon them in their personal capacity.

In the present case, Anne Gnazzo and Devin Marquez executed affidavits stating *that they were not authorized to except service of process for Barbara Waters or Marc*

3

*Ryan in their individual capacities.* (Facts, ¶¶ 13, 16). What the state marshal did was to show up at the two state agencies and deliver the complaints to effectuate service upon the State of Connecticut and the defendants in their "official" capacities. However, leaving the complaints with DAS or OPM did NOT effectuate service upon the individual defendants who have been also been sued in their <u>individual capacities</u>.

    This same situation occurred in the case of <u>Bishop v. State of Connecticut, et al</u>, Case No.3:01CV1140(AVC)(D. Conn. March 31, 2004). In <u>Bishop</u>, the individual defendants were not served personally. The summons were left with an agency official who had no authority to accept service for the defendants in their personal capacities. The defendants raised the issue of personal jurisdiction in their motion for summary judgment. In granting the defendant's motion, District Court Judge Alfred V. Covello correctly observed that once raised, the burden is upon the plaintiff to prove that personal service was properly perfected.

    In sum, the lack of service of process upon defendants Waters and Ryan requires that the case against them in their individual capacities be dismissed.

**DEFENDANTS CIOFFI AND ROBINSON MUST BE DISMISSED IN THEIR PERSONAL CAPACITIES BECAUSE THEY WERE NEITHER SUED NOR SERVED WITH PROCESS IN THEIR PERSONAL CAPACITIES PRIOR TO FEBRUARY 10, 2005**

    The case against defendants Robinson and Cioffi in their personal capacities must also be dismissed for lack of service under slightly different circumstances. Richard Robinson and Nicholas Cioffi are former CHRO Commissioners. They were both initially sued and served by the plaintiff in their OFFICIAL CAPACITIES when the complaint was filed in 2002. Despite an amendment to the original complaint and a

4

"Substituted Complaint dated April 28, 2004,[1] the plaintiff did not sue these two people in their "individual" capacities until February 10, 2005, when he filed a Second Substituted Complaint.

It is established law that when a defendant's capacity in which they are sued is changed to include a personal lawsuit, they must be re-served with process in order to provide them with sufficient notice that they have been sued personally.  In Jackson v. Hiyakawa, 682 F.2d 1344 (9th Cir. 1982), the plaintiff filed suit against several state officers in their *official* capacities. Several amendments were made, including claims against the defendants in their *individual* official capacities.  The defendants were never served with process to put them on notice of the suit against them individually. On appeal, the Ninth Circuit Court of Appeals held that service upon a state entity did not confer personal jurisdiction upon individual defendants in their personal capacities. Affirming the dismissal of the defendants in their individual capacities,  the court held that new service would be necessary in order to satisfy the due process requirement of notice if there was to be a change in the status of defendants.  Id at 1348.  See also, Harkless v. Sweeny  Ind. Sch. Dist. of Sweeny, Tex., 554 F.2d 1353, 1360 (5th Cir.), cert. denied, 434 U.S. 966, 98 S. Ct. 507, 54 L. Ed. 2d 452 (1977).

In the present case, defendants Robinson and Cioffi were not sued in their personal capacities until February 2005 when the plaintiff filed his Second Substituted Complaint. Service upon these defendants back in 2002 was based on suit only in their official capacities. The plaintiff's initial complaint states:

"**Each defendant, except for Vivien Blackford, Leanne Appleton and**

---

[1]  The plaintiff's "Substituted Complaint, as amended", was dated April 28, 2004 but was not accepted by the court and filed until August 17, 2004. (Ex. 1, Docket Sheet Entry # 51).

**Cynthia Watts Elder, is sued in his/her <u>representative capacity only</u>**."

(Ex. 1, Docket Entry # 1, Complaint ¶ 6).  Therefore, in order to comply with the requirements of due process the plaintiff must show that defendants Robinson and Cioffi were personally served AFTER they were sued in their individual capacities. There is no such service in the record and these defendants must be dismissed. For the reasons that follow, the statute of limitations now bars any and all claims against Robinson and Cioffi, so that service of process now upon them individually would be useless.

### THE STATUTE OF LIMITATIONS BARS ANY CLAIMS AGAINST DEFENDANTS CIOFFI AND ROBINSON.

Assuming that the plaintiff could perfect service of process upon defendants Robinson and Cioffi now for claims against them in their personal capacity, such claims would be barred by the statute of limitations.  It is established law that the statute of limitations for bringing a Section 1983 action is governed by the applicable state law, which in Connecticut is three years.  See <u>Loundsbury v. Jefferies</u>, 25 F.3d 131 (2d Cir. 1994). Now in the present case two sets of facts are undisputed.  First, the plaintiff was dismissed from the CHRO on September 9, 1999 and has not worked for that agency since that date.  Second, defendants Cioffi and Robinson left their positions as CHRO commissioners in June 1999 and March 2000, respectively. (Facts, ¶¶ 23-24).  Therefore, in order to avoid having his claim against these defendants in their individual capacities barred by the statute of limitations, the plaintiff would have had to sue these defendants <u>personally</u> by <u>September 9, 2002</u>. Unfortunately for him, the plaintiff did not attempt to sue these defendants personally until February 2005, when he filed his Second Substituted Complaint.  Prior to that date the plaintiff never alleged any claim against

6

these defendants in their individual capacities. The initial complaint explicitly states that only defendants Blackford, Watts Elder and Appleton were being sued personally, thereby excluding defendants Cioffi and Robinson. (Facts, ¶¶ 3, 5).

It is also undisputed that the plaintiff filed a Substituted Complaint on April 28, 2004 and a Second Substituted Complaint on February 10, 2005. However, a careful review of both of these filings indicates an absence of any specific allegations of misconduct by either of these two defendants AFTER September 2, 2002. (Facts, ¶¶ 5, 9, 22). Therefore, any claims raised for the first time against these two defendants in 2005 are clearly time barred. The same defect applies equally to the plaintiff's April 28, 2004 pleading because defendants Cioffi and Robinson had both left the CHRO long before April 28, 2001, three years prior to the April 28, 2004 filing.[2]

> **THE PLAINTIFF'S §§ 1983 AND 1981 CLAIMS AGAINST DEFENDANTS RYAN, WATERS, BLACKFORD, WATTS ELDER, CIOFFI AND ROBINSON IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT BECAUSE THE SUIT IS ACTUALLY AGAINST THE STATE.**

The plaintiff has also sued ALL of the defendants in their <u>official</u> capacities. Any claim against these defendants in their official capacities must be dismissed because the state is not a "person" within the meaning of Sections 1983 and 1981. Furthermore, the Eleventh Amendment bars such claims to the extent the plaintiff is seeking monetary damages.

Section 1983 only authorizes the imposition of liability against a "person" who acting under color of state law violates another person's federally protected rights. The Supreme Court in <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 109 S. Ct 2304,

---

[2] The Defendants submit that even in the April 28, 2004 pleading, which is a convoluted mess of factual assertions, neither defendants Robinson nor Cioffi were sued personally. (The defendants reserve the right to make additional statute of limitations arguments in the motion for summary judgment which they will file after discovery is closed.)

105 L. Ed. 2d 45 (1989), has made clear that neither State agencies nor State officials acting in their official capacities are "persons" under section 1983. Thus, to the extent that the defendants have been sued in their official capacities for damages and retrospective relief under section 1983, state officials acting in their official capacities are not "persons" subject to section 1983 liability. Gaby v. Board of Trustees of Community Technical Colleges, 348 F.3d 62 (2d Cir. 2003).

Furthermore, the Eleventh Amendment to the United States Constitution bars the State of Connecticut CHRO from being sued under 42 U.S.C. § 1983. The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amend. XI. The well accepted rule of law is that 42 U.S.C. § 1983 does not abrogate the Eleventh Amendment immunity of states, including suits against state agencies such as CHRO.

The established law is that the Eleventh Amendment also bars an action for damages against all of the individual defendants in their official capacities:

> "The Eleventh Amendment bars a suit against state officials when the 'state is the real, substantial party in interest.'" Pennhurst State School & Hospital v. Halderman, supra, ___ U.S. at ___, 104 S. Ct at 908, quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S. Ct. 347, 350, 89 L. Ed. 389 (1945). Thus a suit which seeks a money judgment "which must be paid from the state treasury is barred by the Eleventh Amendment," even though it is nominally asserted against an individual official. Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 1356, 39 L. Ed. 2d 662 (1974). Since plaintiff seeks money damages from the individual defendants "in their official capacity" for acts performed within the scope of their respective offices, recovery, if any, will be from the state treasury; thus the bar of the eleventh amendment applies.

Daisernia v. State of New York, 582 F. Supp. 792, 799 (N.D.N.Y. 1984). The Eleventh Amendment clearly bars the plaintiff's request for compensatory damages, punitive

damages, attorney's fees and costs against the defendants in their official capacities because such claims are essentially a suit against the state, acting through the defendants in their official capacities.

The same analysis applies to the plaintiff's section 1981 claim against all of the individual defendants in their official capacities. According to numerous courts in the Second Circuit, the Eleventh Amendment bar of suits against the state applies to section 1981 claims. Yoonessi v. State Univ. of New York, 56 F.3d 10 (2d Cir. 1995); Reed v. State of Connecticut Department of Transportation, 2000 U.S. Dist. Lexis 6271 (D.Conn. 2000); Chada v. Connecticut Medical Examining Board, 1999 U.S. Dist. Lexis 18939 (D.Conn. 1999); Daisernia v. State of New York Department of Corrections, 582 F. Supp. 792, 799, 803 (N.D.N.Y. 1984) (Section 1981 does not abrogate the sovereign immunity of the states).

Since a claim premised upon §§ 1983 or 1981 against all of the individual defendants in their official capacities is actually a suit against the state, the Eleventh Amendment bars such actions.

### PLAINTIFF'S CLAIMS AGAINST DEFENDANTS DAS AND OPM UNDER TITLE VII ARE BARRED BECAUSE THE PLAINTIFF DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES

Prior to filing a court action for damages under Title VII, a plaintiff is required to exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC). See 42 U.S.C. § 2000e-5; Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Brown v. General Servs. Admin., 425 U.S. 820, 832-33 (1976). First, a plaintiff must file a complaint with a state or local fair employment opportunity commission if one exists. See 42 U.S.C. § 2000e-5(c); Great Am. Fed. Sav. & Loan Ass'n. v. Novotny, 442 U.S. 366, 373 (1979). Second, the

plaintiff must file a timely charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(e). Finally, the plaintiff must receive a right to sue letter from the EEOC and act upon it to file suit within 90 days. See 42 U.S.C. § 2000e-5(f)(1); Baldwin County Welcome Ctr. V. Brown, 466 U.S. 147, 152 (1984); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974).[3]

When a plaintiff first files discrimination charges with a state agency such as CCHRO, he must file charges with the EEOC within 300 days after the last alleged unlawful act comprising his Title VII claim. See 42 U.S.C. § 2000e-5(e)(1); Butts v. City of New York Dep't. Of Hous. Preservation and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993). If the plaintiff requests that the state agency file the charge with the EEOC, the charge will be deemed to have been filed 60 days after it is filed with the state agency. See 29 C.F.R. § 1601.13(b)(1).

The plaintiff bears the burden of establishing the existence of all jurisdictional prerequisites and conditions precedent to suit. Fed. R. Civ. P. 8(a), 9(c). "Absent a legitimate waiver, estoppel, or equitable tolling, failure to file an agency charge within the applicable time period precludes a plaintiff from bringing a Title VII suit in federal court." Yoonessi v. State Univ. Of New York, 862 F. Supp. 1005, 1013 (W.D.N.Y. 1994). This plaintiff has failed to establish that the employment discrimination charges were timely filed with the EEOC against DAS and OPM.

Also important to this case is the recent Supreme Court holding requiring that a separate EEOC complaint be filed for discrete acts of discrimination. (i.e. failure to hire, termination, demotion, etc.). See, National Railroad Passenger Corp. v. Abner-Morgan.,

---

[3] A state agency is NOT a person within the meaning of §1983 and therefore a claim against the state may not be premised upon such a theory. Gaby v. Board of Trustees of Community Technical Colleges, 348 F.3d 62 (2d Cir. 2003).
.

10

536 U.S. 101, 122 S. Ct.. 2061, 153 L. Ed. 2d 106 (2002). Mr. Brown is prone to argue that because the state of Connecticut is one employer, he need not file separate charges of discrimination. The defendants take issue with such a conclusion, but it is moot because in National Railroad, the Supreme Court made it clear in a case involving the same employer, that discrete acts are barred unless a separate EEOC charge is filed within the applicable time period. Id.

In the present case, the plaintiff testified under oath that other than the two charges against the CHRO, he never filed a charge of discrimination against any other state agency as of the date of his deposition in 2003.[4] (Facts, ¶ 17). There is NO EVIDENCE that the plaintiff filed the required EEOC charges against DAS or OPM sufficient to maintain a claim under Title VII for the acts alleged in his Second Substituted Complaint. (Facts, ¶ 30)

> **PLAINTIFF'S CASE AGAINST THE CHRO IS BARRED BECAUSE HE DID NOT FILE SUIT WITHIN 90 DAYS OF RECEIPT OF THE NOTICE OF RIGHTS (AKA RIGHT TO SUE LETTER) FROM THE EEOC.**

Defendant CHRO submits that the plaintiff's claims (against CHRO in his original and amended complaints) are both time barred because: (1) he did not file his initial suit within 90 day of receipt of his Right to Sue Notice dated October 31, 2001 and (2) he failed to amend his complaint within 90 days of his receipt of a right to sue letter, dated September 30, 2003, for his second claim. A Title VII claim is time-barred if the claim is not filed within 90 days of the receipt of a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); see also Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149-150 (1984); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994); Smith v. Local Union 28

---

[4] Since 2004, the plaintiff filed one or more CHRO complaints against the Connecticut Department of Correction, the Department of Mental Health and Addiction Services and the Department of Public Works. These claims are not currently part of the plaintiff's case before this Court.

11

Sheet Metal Workers, 877 F. Supp. 165, 172 (S.D.N.Y. 1995). Section 42 U.S.C. § 2000e-5(f)(1) specifically states that upon receipt of the right-to-sue-letter, "…within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge by the person claiming to be aggrieved."

### EEOC Complaint 16AA01264

Plaintiff's failure to comply with the statutory 90-day filing period, by filing his complaint 96 days after he received the right-to-sue letter from the EEOC, is grounds for dismissal of the complaint. (Facts, ¶ 3). Smith v. Local Union 28 Sheet Metal Workers, 877 F. Supp. 165, 172 (S.D.N.Y. 1995) (dismissing *pro se* action filed 95 days after receipt); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 145-146 (2d Cir. 1984) (dismissing *pro se* action filed 97 days after receipt); Moscowitz v. Brown, 850 F.Supp. 1185, 1191-92 (S.D.N.Y. 1994) (dismissing *pro se* action filed 91 days after receipt), *rev'd on other grounds* by Lane v. Odgen Entertainment, 13 F.Supp.2d 1261, 1272 (M.D. Ala 1998).

In the present case, Brown was issued a Notice of Right to Sue from the EEOC for claim 16AA01264 on October 31, 2001. Under the law, a three day mailing rule applies. Baldwin County Welcome Center v. Brown, 466 U.S. 147, 104 S. Ct. 1723 (1978); Sherlock v. Montefiore Medical Center, 84 F.3d 522, 525-26 (S.D.N.Y. 1996). As such, the plaintiff would have presumptively received the notice on November 3, 2001. Ninety days from that date would be February 1, 2002. However, the plaintiff filed his lawsuit on February 6, 2002, some 96 days after receipt of the right to sue letter.

Courts have consistently refused to give *pro se* plaintiffs additional time to comply with the statutory filing period requirements. It would be unfair to allow this

12

plaintiff, who is an attorney himself and the former Acting Executive Director of the Commission on Human Rights and Opportunities, to disregard this clearly designated statutory filing requirement. Reiterating this rule, the Supreme Court stated in <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 826 (1980), "[i]n the long run, experience teaches the strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." <u>Id</u>. at 826. Therefore, the plaintiff's Title VII claims against CHRO in his original complaint must be dismissed for this reason.

### **EEOC Claim 16AA300728**

In the present case the plaintiff was issued a second right to sue letter on September 30, 2003 relating to a separate EEOC charge that he filed against CHRO on January 28, 2003. The second claim pertained to the plaintiff's rejection for a Regional Manager position in the CHRO Waterbury office in 2002. According to Donald Newton, the CHRO Chief of Field Operations, the hiring of a regional manager position in Waterbury was a separate and distinct job from the Deputy Director position from which the plaintiff was terminated on September 9, 1999. The regional manager position was selected by the CHRO Executive Director and did not involve the CHRO commissioners. (Facts, ¶ 27).

Applying the three-day mail rule, the plaintiff presumptively would have received the notice from the Department of Justice by October 3, 2003. However, the plaintiff did not allege facts about the Waterbury regional manager position until April 28, 2004, when he attempted to file a Substituted complaint, some 200 plus days from receipt of his

right to sue letter. Therefore, defendant CHRO submits that this second claim is also time barred.

The plaintiff may argue that he should be exempt from the 90-day filing requirement because he had already commenced a suit against the CHRO. But such an argument would be inconsistent with the purpose of the 90-day rule, which requires that such claims (involving discrete acts) must be asserted in a judicial forum within the 90 day period. Defendant CHRO also reminds the court that the plaintiff's second charge of discrimination in 2003 related to an open position in the Waterbury office that occurred some 2.5 years AFTER he was dismissed from his Deputy Director position in 1999, making a claim for relation back very weak. (Facts, ¶ 29). The original complaint makes no reference to his rejection for the Waterbury Regional Manager position. According to the plaintiff's Second Substituted Complaint, he did not learn that he had not been selected for the Waterbury position <u>until December 1, 2002</u>. (Facts, ¶ 20). This point only highlights the distinct factual difference between the plaintiff's dismissal from the CHRO as a Deputy Director in 1999 and his rejection for the Waterbury position in 2002. For this reason there can be no relation back, because (according to his own allegations) when the plaintiff first filed his complaint he had not even learned of his rejection for the Waterbury job. Brown actually filed his charge of discrimination with CHRO and EEOC regarding the Waterbury job on January 28, 2003. In sum, the plaintiff's claim regarding the Waterbury job is also barred.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for partial summary judgment should be granted.

                              DEFENDANTS,

                              RICHARD BLUMENTHAL
                              ATTORNEY GENERAL

BY:                      _____
                              Joseph A. Jordano
                              Assistant Attorney General
                              Federal Bar # ct21487
                              55 Elm Street, P.O. Box 120
                              Hartford, CT 06141-0120
                              Tel: 860-808-5340
                              Fax: 860-808-5383
                              Email: Joseph.Jordano@po.state.ct.us

BY:                      _____
                              David M. Teed
                              Assistant Attorney General
                              Federal Bar # ct09102
                              55 Elm Street, P.O. Box 120
                              Hartford, CT 06141-0120

## **CERTIFICATION**

The undersigned hereby certifies that on the 24th day of March, 2005, a true and accurate copy of the foregoing was sent by United States mail, first class postage prepaid, to the following:

Jewel E. Brown
21 Brewster Road
South Windsor, CT

_____
Joseph A. Jordano
Assistant Attorney General