IN THE UNITED STATED DISTRICT COURT
DISTRICT OF CONNECTICUT

Jewel E. Brown,
PLAINTIFF.

VS      Docket # # 32CV223 (CFD)

The state of Connecticut and its Commission on Human
Rights and Opportunities, et al,
DEFENDANTS

*
*
2005 JUL 13  A II: 21
*
*   DISTRICT COURT
*   FORD, CT.
*
* July 12, 2005

PLAINTIFF'S CORRECTED AND SUBSTITUTED
MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, the Plaintiff and offers the following Memorandum of Law

in Opposition to Defendants' Motion of Partial Summary Judgment.

(A) Standard of Review
Motion for Summary Judgment

Plaintiff basically does not take issue with Defendants' Statement of the

standards applicable to the review of a Motion for Summary Judgment. As such,

Plaintiff will merely echo the Standard as recently stated by several decisions

issued by the courts, that is, United States District Court for the District of

Connecticut, the United States Court of Appeals for the Second Circuit,  and as

earlier crystallized by the United States Supreme Court.    The United States

District Court for the District of Connecticut observed that:

> Summary judgment is appropriately granted when the evidentiary
> record shows that there are no genuine issues of material fact and that
> the moving party is entitled to judgment as a matter of law.
> Fed.R.Civ.P. 56(c).   In determining whether the record presents
> genuine issues for trial, the court must view all inferences and
> ambiguities in a light most favorable to the non-moving party.   See
> Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.) , Cert. Denied, 502 U.S.
> 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).   A plaintiff raises a

cases of <u>Adickes v. S.H. Kress & Company</u>, 398 U.S. 144 (1970) and <u>Colotex Corp. v. Catrett</u> 477 U.S. 317 (1986). In <u>Adickes,</u> plaintiff sued defendant alleging that defendant had conspired with the City of Hattiesburg Police Department to have her arrested in violation of her federally secured and protected civil rights pursuant to *Title 41, United States Code, Section 1983*.

Defendant moved for summary judgment. It argued that the affidavits and depositions of file did not permit the inference that it had acted under color or law. The trial judge granted summary judgment for Kress, explaining that plaintiff had failed to come forward with any facts on which a conspiracy might be inferred. The Court of Appeals affirmed. However, the Supreme Court reversed, holding that the lower courts had applied the wrong standard in considering whether Adickes, the non-movant, had come forward with any proof. Instead, the court explained that the burden was on the Movant and since the Movant failed to carry its burden to show an absence of any material facts, the summary judgment motion should have been denied. Specifically, the court held:

> "As the moving party, respondent [Kress] had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party. Respondent here did not carry its burden because of its failure to foreclose the possibility that there was a policeman in the Kress store while petitioner was awaiting service and that this policeman reached an understanding with some Kress employee that Petitioner not be served. ...
>
> Pointing to Rule 56(e), as amended in 1963, respondent argues that it was incumbent on petitioner to come forward with an affidavit properly asserting the presence of the policeman in the store, if she were to rely on that fact to avoid summary judgment. ....
>
> The argument does not withstand scrutiny; however, for the 1963 amendment was not intended to modify the burden of the moving party

3

to show initially the absence of a genuine issue concerning any material fact. The Advisory Committee stated that <u>"where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied, **even if no opposing evidentiary matter is presented". ..."**</u>

Thereafter, in the case of <u>Colotex Corp. v. Catrett,</u> supra., the Supreme Court has occasion to revisit and reaffirm the soundness and current efficacy of its holding in Kress. In reaffirming its holding in Kress, the court noted:

> The Court of Appeals in this case felt itself constrained, however, by language in our decision in Adickes. [citation omitted]. The Adickes Court said that "the 1963 Amendment was not intended to modify the burden of the moving party . . . to show initially the absence of a genuine issue concerning any material fact". We think that this statement is accurate . . . since we fully agree with the Adickes court that the 1963 Amendment to Rule 56(e) was not designed to modify the burden of making the showing generally required by Rule 56 (c)."

Hence, Plaintiff submits that it is against this background that the merits of defendants' Motion for Partial Summary Judgment should be weighted and evaluated. Consequently, Plaintiff will initially evaluate the merits of defendants' claim that the Eleventh Amendment bars suit against the individual defendants in their official capacities.

**PLAINTIFF'S §1983 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS RYANS, WATERS, BLACKFORD, ELDER, CIOFFI AND ROBINSON IN THEIR OFFICIAL CAPACITIES ARE NOT BARRED BY ELEVENTH AMENDMENT IMMUNITY TO THE EXTENT THAT THE COMPLAINT SEEKS ONLY PROSPECTIVE INJUNCTIVE AND/OR DECLARATORY RELIEF.**

In defendants' Memorandum of Law in support of their motion for Partial Summary Judgment, defendants base the exclusivity of their Eleventh Amendment claim on the following contention, that being: "any claim against these defendants in their official capacities must be dismissed because the state

is not a "person" within the meaning of Sections 1983 and 1981."[1] To support this

claim, defendants make the following argument:

> "Section 1983 only authorizes the imposition of liability against a "person" who acting under color of [state law] violates another person's federally protected rights. The Supreme Court *in Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S. CT. 2304, 105 L.Ed.2d 45 (1989), has made clear that neither State agencies nor State officials acting in their official capacities are "persons" under section 1983. Thus, to the extent that the defendants have been sued in their official capacities for damages and retrospective relief under section 1983, state officials acting in their official capacity are not "persons" subject to section 1983 liability. <u>Gaby v. Board of Trustees of Community Technical Colleges,</u> 348 F.3d 62 (2d Cir. 2003)."

However, the Supreme Court in <u>Will v. Michigan Department of State of</u>

<u>Police, supra,</u> made it clear that it was not overturning the century old <u>Ex Parte</u>

<u>Young</u> exception to Eleventh Amendment Immunity with respect to section 1983

action. In doing so, the court held:

> "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt,* <u>469 U.S. 464, 471</u> (1985). As such, it is no different from a suit against the State itself. See, e. g., *Kentucky v. Graham,* <u>473 U.S. 159, 165</u> -166 (1985); *Monell, supra,* at 690, n. 55. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device. <u>10</u>"

However, in footnote 10, the court commented as follow:

> **"Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under 1983 because "official-capacity actions for prospective relief are not treated as**

---

[1] Plaintiff contends that to the extent that defendants purports to read the complaint as asserting a Section 1981 claim against the individually named defendants in their official capacities, that this is, indeed, a misreading of the complaint. In this respect, Plaintiff points out that the complaint makes only one reference to Section 1981 and that is Section II which sets out the general bases for the court's jurisdiction. In other words, the jurisdictional bases set forth herein are asserted in the alternative and relied upon only to the extent they support the court's jurisdiction on a particular point. Hence, each jurisdictional basis set forth in Section II of the complaint was not intended to support the court's jurisdiction for each count alleged in the complaint.

actions against the State." *Kentucky v. Graham*, <u>473 U.S., at 167</u>, n. 14; *Ex parte Young*, <u>209 U.S. 123, 159</u> -160 (1908). This distinction is "commonplace in sovereign immunity doctrine," L. Tribe, *American Constitutional Law* 3-27, p. 190, n. 3 (2d ed. 1988), and would not have been foreign to the 19th-century Congress that enacted 1983, see, e. g., *In re Ayers*, <u>123 U.S. 443, 506</u> -507 (1887); *United States v. Lee*, <u>106 U.S. 196, 219</u> -222 (1882); *Board of Liquidation v. McComb*, <u>92 U.S. 531, 541</u> (1876); *Osborn v. Bank of United States, 9 Wheat.* 738 (1824). City of Kenosha v. Bruno, <u>412 U.S. 507, 513</u> (1973), on which JUSTICE STEVENS relies, see post, at 93, n. 8, is not to the contrary. That case involved municipal liability under 1983, and the fact that nothing in 1983 suggests its "bifurcated application to municipal corporations depending on the nature of the relief sought against them," <u>412 U.S., at 513</u>, is not surprising, since by the time of the enactment of 1983 municipalities were no longer protected by sovereign immunity. Supra, at 67-68, n. 7."

Moreover, plaintiff submits that on several occasions subsequent to the Supreme Court's decision in *Will,* the Second Circuit has made clear the fact that the <u>Ex Parte Young</u> exception to Eleventh Amendment Immunity is well and alive in this Circuit. In this respect, Plaintiff initially calls the court's attention <u>to Kostok v. Joyce A. Thomas, Commissioner, Connecticut Department of Social Services,</u> in her Official Capacity, ____F. 3d _____ (2d Cir. 1997). There, in denying plaintiff's claim for injunctive relief, the district court recognized that federal courts are not barred from granting prospective injunctive relief against state officials on the basis of federal claims, but nevertheless dismissed Kostok's claim because, in the court's opinion, the refusal to pay for a motorized wheelchair violated a state regulation--rather than federal law, and the complaint sought retroactive relief, and was therefore barred by the Eleventh Amendment despite the <u>Ex parte Young</u> exception.

In reversing the district court the Second Circuit held:

6

As a general matter, the Eleventh Amendment bars suits of any sort against a state in federal court unless the state has consented to be sued or Congress has expressly abrogated the state's immunity. [1] "State participation in [the federal Medicaid] program . . . does not in itself constitute waiver . . . ." Yorktown Med. Lab., Inc. v. Perales , 948 F.2d 84, 88 (2d Cir. 1991).

If an act by a state violates the federal Constitution or federal law, however, **then the enforcing state actor loses official immunity**: "[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." Ex parte Young , 209 U.S. 123, 159-60 (1908); see also Pennhurst State School & Hosp. v. Halderman , 465 U.S. 89, 102 (1984). A challenge under the federal Constitution to a state official's action in enforcing state law is not viewed as an action against the state and is not defeated by Eleventh Amendment immunity. See Green v. Mansour , 474 U.S. 64, 68 (1985).

The Second Circuit repeated its holding in Kostok as recent as 2003 in the case of Ford v. Reynolds, et al, supra. There, plaintiff appealed from the judgment of the United States District Court for the Eastern District of New York granting summary judgment in favor of defendants on plaintiffs claims under the First, Fifth and Fourteenth Amendments to the United States Constitution. In dismissing the complaint, the district court concluded that each of the defendants was entitled to sovereign immunity. Although, the Second Circuit affirmed the dismissal of plaintiff's Ex Parte Young claim, it did so by addressing and adjudicating their merits, notwithstanding the fact that the court's federal question jurisdiction was invoked pursuant to 42 U.S.C. §1983. In so doing, the court held as follows:

"The Eleventh Amendment bars the award of money damages against state officials in their official capacities. However, under Ex parte Young, 209 U.S. 123 (1908), **there is a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such**

7

> **a suit is not one against the State, and therefore not barred by the Eleventh Amendment.** CSX Transp. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002) (internal citations and quotation marks omitted). The appellants contend that this exception applies to their claims.

> "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md. v. Pub. Serv. Comm'n of Md., 122 S.Ct. 1753, 1760 (2002) (internal citation and quotation marks omitted).

Thereafter, upon concluding a straightforward inquiry into whether the complaint alleged an ongoing violation of federal law and sought relief properly characterized as prospective, the court concluded that it did not, and affirmed the district court's dismissal.

Hence, plaintiff shall now conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief that can be properly characterized as prospective. See: Verizon Md. v. Pub. Serv. Comm'n of Md 122 S.Ct. 1753, 1760 (2002).

The Complaint consists of thirteen (13) separate counts alleging thirteen separate and independent causes of action. Each count carefully identifies the conduct that allegedly violated the secured and protected constitutional right, the defendant(s) against whom it is filed and the relief sought. Plaintiff submits, and defendants do not challenge this submission[2], that each count pleads sufficient facts to warrant the imposition of prospective injunctive relief against the named

---

[2] Plaintiff notes, as will be more fully hereinafter developed, that defendants make no attempt, either in their Local Rule 56(a)(1) Statement or in their Memorandum of Law supporting their Motion, to conduct a straightforward inquiry into the complaint for purposes of determining whether it seeks prospective injunctive relief. As such, plaintiff submits that, as a matter of law, defendants Eleventh Amendment Immunity argument must be rejected. See: Adickes v. S.H. Kress & Company and Colotex v. Catrett, supra.

8

individual defendants acting in their official capacities. Since, with limited exception, each of the thirteen (13) counts plead facts sufficient to impose prospective injunctive relief on <u>ALL</u> of the individually named defendants, plaintiff will review only those counts necessary to show that plaintiff seeks injunctive relief against each of the named defendants.

In count I, plaintiff set out a plethora of facts alleging that defendants, Blackford, Cioffi, Robinson and Appleton[3] spear-headed a course of conduct that was both intended and resulted in his application to staff CHRO's vacant 1998 and 1999 Executive Director's position being denied due to racial and sexual based reasons in violation of the Equal Protection Clause of the Fourth and Fourteenth Amendments of the United States Constitution. (See: Defendants' Exhibit #2, at paragraphs 1-41; and especially paragraphs 37 – 41). To emphasize this point, plaintiff calls the court's attention to the relief paragraph set forth in count I, wherein plaintiff, in the complaint, makes the following allegation, to wit:

> In conclusion, plaintiff states that defendants, acting collectively and individually, elected to reject his application despite his superior qualifications and **due solely to the fact that he was a black employee in Martin's administration and that simultaneously defendants elected to select Watt-Elder because she is female and black and due to defendants' hope that by selecting a less qualified black employee defendants could successfully defend themselves against any subsequent lawsuit that the plaintiff might commence. As such, plaintiff is entitled to such relief as provided by law or in equity.**

---

[3] Strangely, and without explanation, defendants have opted to concede the fact that the Eleventh Amendment does not bar this court's imposition of injunctive relief against defendant Appleton even though she, too, is being sued in her official capacity pursuant to section 42 USC sec. 1983.

Hence, plaintiff submits that this straightforward inquiry into the facts of the complaint clearly reveals that, among other things, the complaint seeks prospective injunctive relief. As such, plaintiff submits that the claim contained in count I against defendant Cioffi, Robinson, Blackford, and Appleby in their official capacities is not barred the Eleventh Amendment Immunity doctrine.

In count II and III, plaintiff alleges that defendant Elder joined into the discriminatory conduct by engaging in numerous illegal acts that simultaneously removed Plaintiff from his Deputy Director of Enforcement position and denied plaintiff the opportunity to compete for the CHRO vacant Director of Field Operations Position. Specifically, respecting defendants' discriminatory conduct, on this count, the complaint pleads that Elder, Appleton and Blackford:

> "... precluded plaintiff from having an opportunity to apply for this position by electing to summarily promote Donald Newton, white male, employee into the position. In doing so, defendants were motivated by their desire to terminate and/or preclude the employment of all black managerial employees in the Martin administration.
>
> Although, defendants have not given plaintiff a 'formal' reason for not allowing him to compete for the vacant position, defendants did offer an explanation to the EEOC in response to plaintiff's administrative complaint. There, defendants, acting through defendant Elder stated, "the position of Regional Manager was reclassified to the Chief of Field Operations position".
>
> Plaintiff states that this reason is false because Newton failed to satisfy the state's reclassification requirements inasmuch as he neither possessed the supervisory experience nor was he performing the duties and responsibilities of the job, as required by statute, at the time of the alleged reclassification decision.

Hence, plaintiff submits that this straightforward inquiry into the facts of the complaint clearly reveals that, among other things, count II pleads sufficient facts to show that defendant Elder joined the race and gender based discriminatory

10

conduct to which defendants Cioffi, Blackford, Robinson and Appleton were already parties. Since count II alleges that defendants deprived plaintiff of the right to compete for CHRO's vacant Director of Field Operation's position, due solely to plaintiff's race, this conduct, if proven would entitle plaintiff to injunctive relief. As such,  plaintiff submits that the claim contained in count II against defendant Elder, in addition to Cioffi, Robinson, Blackford, and Appleton in their official capacities, is not barred the Eleventh Amendment Immunity doctrine.

Similarly, in Count VI, VII, and VIII, Plaintiff adds defendants Ryan and Waters to the discriminatory activities. There Plaintiff pleads a scheme of discriminatory conduct that alleges that each of the named defendants conspired to, among other things: (a) remove him from his Deputy Director's position by affirmatively recruiting Defendant Elder to accept the position on an acting basis; and (b) denied plaintiff compensation in accordance with State's Compensation policies.

In this respect, Plaintiff calls the Court's attention to paragraphs 105, 106, 115, 116 and 117. They provide, as hereinafter set out:

> (105) Thereafter, plaintiff learned that defendants, acting in conjunction with defendant Ryan and Waters had met on numerous occasion during the period in which defendant Blackford were purporting to be working out a solution with plaintiff pertaining to Appleton and that the sole purpose of these meetings were to give defendants Ryan and Waters sufficient time to identify some black person in state government that they could put in charge of the commission who would consent to Appleton having exclusive jurisdiction over all of the commission's personnel and budgetary matters.

> (106) In this respect, Elder explained that the commissioners actively solicited her for the position. Specifically, according to Elder, she was called out of a meeting and instantaneously offered the position and was told that she had to make up her right then and there (on the spot).

11

(115) In an effort to get to the bottom of the issue, plaintiff submitted a written request to both defendants Ryan and Waters who knowingly and intentionally provided the commissioners with false and incorrect information. Specifically, (acting through Deputy DAS Commissioner, Al Mozola), they advised the commissioners that even though the Governor had established the compensation policy contained in the Shaun C. McDonough Compensation Directive, that notwithstanding this Directive, the commissioners were able to establish a difference salary formula if they choose to do so.

(116) Thereupon, plaintiff reminded DAS of the Compensation Policy Directive that DAS had given to commission in 1994, following an attempt by the commissioners to increase the salaries of its statutory office holders, (that is, the Executive Director, the Deputy Director(s) and the General Counsel), to an amount that exceeded that established in the Governor's Compensation policy but which remained within the salary range for each position.

(117) In a nutshell, in its 1994 Directive, DAS advised the commissioners that they did not have the authority to authorize the payment of a salary different from that established in the Governor's compensation policy, notwithstanding the fact that the salary established by the commissioners was within the range of compensation fixed in the Executive Pay Plan for the position.

Again, in his prayer for relief, plaintiff sought such legal and equitable relief as is provided by law. Hence, for the foregoing reasons, Plaintiff submits he has pled a claim for prospective injunctive relief against each of the individual defendants that is not barred by the doctrine of Eleventh Amendment Immunity[4].

Moreover, Plaintiff submits that defendants' Motion could not be sustained by the court unless defendants had conducted a straightforward analysis into the facts alleged in the complaint and affirmatively established that the facts, as pled by Plaintiff could not be established under any version put forth by Plaintiff.

---

[4] Plaintiff submits that his failure to have joined those individuals replacing defendants Ryan, Waters and Elder is and was at all times pertinent hereto beyond his ability because they were just recently appointed, that is during the months of October 2004 thorough January 2005. As such, they were being appointed at the time plaintiff was obligated to file his Second Amended and Substituted Complaint. Consequently, Plaintiff will hereafter file his formal motion for leave to amend.

Here, it is impossible for defendants to make such a showing because they have conceded the application of Ex Parte Young, at least, to defendant Appleton. Consequently, as stated earlier, this concession, together with defendants' failure to have conducted an Ex Parte Young analysis into the facts pled in the complaint, are fatal to the merits of their motion. Again, Plaintiff calls the court's attention to the holdings of the United States Supreme Court in both <u>Adickes</u> and <u>Colete</u>, <u>supra</u>, to the effect that:

> <u>"where the evidentiary [submission] in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied, **even if no opposing evidentiary matter is presented". ..."**</u>

Indeed, where, as here, Plaintiff has submitted an opposing evidentiary pleading, the principle articulated in Adickes and Coletex is mandatory, that is, defendants' motion must be denied because it failed to establish the absence of a genuine issue of material fact with respect to the application of the Ex Parte Young doctrine.

**IN ACCORDANCE WITH RULE 4(M) OF THE FEDERAL RULES OF CIVIL PROCEDURE, PLAINTIFF SHOULD BE ALLOWED ADDITIONAL TIME TO PERFECT SERVICE OF PROCESS ON DEFENDANTS WATERS, RYAN, ROBINSON AND CIOFFI IN THEIR INDIVIDUAL CAPACITIES[5].**

Defendants ask the court to dismiss the complaint against Waters, Ryan, Cioffi and Robinson, to the extent plaintiff seeks to sue them in their individual capacities, due to the fact that these defendants have not yet been served with summons as required by Rule 4(e), FRCP. To support this request, defendants

---

[5] In order to clarify this request, plaintiff notes that it is twofold. First, Plaintiff seeks Leave of Court to File a Technical Amendment to the complaint naming Defendants Ryan's, Waters' and Elder's replacements. Second, the Rule 4(m) additional time that Plaintiff seek is merely to have these Defendants, who have already been served as required by Rule 4, reserved in accordance with the strictures of Conn. Gen. Stat. § 52-57, which requires that the summons be placed in their hands to perfect personal service.

13

represent to the court that "the summons and complaint was not served on them". Plaintiff submits that this is a distortion of the facts which the returned summons and proof of service affidavits clearly reveal. (See: Affidavits of Devin Marquez and Anne Gnazzo, submitted by defendants). Hence, the issue before this court is that of reserving the summons and complaint. (See: <u>Panaras v. Liquid Carbonic Industries Corporation</u>, et al, No. 95-3742, _____F3d _____, (7th Cir.1996).

Plaintiff submits that defendants requested remedy, although permitted, is definitely not required by Rule 4(m). In this respect, Rule 4(m) provides:

> TIME LIMIT FOR SERVICE. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

In an effort to cast insight into the meaning of the new Rule, 4(m), the Advisory Committee's Note explains that the new subdivision explicitly provides that the court "***shall*** **allow additional time if there is 'good cause' for the plaintiff's failure to effect service in the prescribed 120 days,** and <u>authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. ..."</u> Additionally, the Advisory Committee's Note states that "Relief may be justified, for example, **if the applicable statute of limitation would bar the refiled action .... "**

14

Similarly, in an effort to ascertain the meaning and requirements of Rule 4(m), Plaintiff calls attention to the Seventh Circuit's decision in Panaras, supra. There, in interpreting the requirements of the Rule, the court stated:

> When considering a process defect like the one involved in this case, a district court must first inquire whether a plaintiff has established good cause for failing to effect timely service. If good cause is shown, the court shall extend the time for service for an appropriate period. Rule 4(m), Fed. R. Civ. P.; Espinoza, 52 F.3d at 841. In other words, where good cause is shown, the court has no choice but to extend the time for service, and the inquiry is ended. Petrucelli, 46 F.3d at 1305. If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time. Rule 4(m); see Henderson v. United States, 116 S. Ct. 1638, 1643 (1996) **(the Court recognized that in the 1993 amendments to the rules, courts have been accorded discretion to enlarge the 120-day period "even if there is no good cause shown" (citing Advisory Committee Note to Rule 4)). Thus, absent a showing of good cause, a district court must still consider whether a permissive extension of time is war- ranted. Espinoza, 52 F.3d at 841.**

Hence, the first question is whether or not Plaintiff can show "good cause" for not having perfected service of the complaint and summons upon these individuals within the time period required by law? Plaintiff submits, on the one hand, that this is a moot question because he did, in fact, perfect service of the complaint and summons upon the named parties or, on the other hand, the fact that plaintiff did perfect service, as required by law, (even though the perfected service is insufficient under Connecticut law to empower the court with jurisdiction over these defendants in their personal capacities), constitutes "good cause" as a matter of law.

In making this argument, plaintiff submits to the court that he has been unable to find even one decision that purports to set forth what facts a plaintiff

must show in order to establish good cause. In this respect, the closest Plaintiff has been able to come in finding such cases are the decisions in Panaras, quoted above and the decision in <u>Hendry v. Schneider</u>, No. 95-8049, \_\_\_\_\_F. 3d _____, (10th Cir. 1997). In <u>Hendry</u>, the court held that plaintiff possessed good cause for not perfecting service as required by Rule 4(m) inasmuch as defendant has successfully evaded service of process.

Additionally, plaintiff submits that if the foregoing facts do not establish good cause within the meaning of Rule 4(m), the following facts constitute such a showing. Here, Plaintiff calls the court's attention to the facts that lead to his failure to perfect personal service on these defendants within the time period required by law. In a nutshell, plaintiff submits that these were two. The first was Plaintiff's mistaken belief as to the applicable law governing the perfection of personal service on a defendant in Connecticut. The second was Plaintiff's desire, at the time of filing the complaint, to take a balanced and reasoned approach to the allegations and claims that plaintiff asserted.

With respect to Plaintiff's mistake of law claim, Plaintiff submits the following argument. In a nutshell, plaintiff submits that his failure to perfect personal service on these defendants was occasioned by Plaintiff's mistaken legal belief that personal service could be perfected under Connecticut law by the process server leading a copy of the summons and complaint with an individual over the age of eighteen at the named defendants' place of employment. Indeed, Plaintiff has now come to understand that this belief is erroneous.

Nonetheless, Plaintiff submits that a mistaken belief with respect to this issue of law should be considered by the court in determining whether or not Plaintiff has good cause for not perfecting service on these defendants within the strictures required by Connecticut law. In large part, Plaintiff base this request on the fact that Rule 15(c) expressly authorizes the consideration of a legal mistake for purposes of determining whether or not the statute of limitation should be tolled to allow an amended complaint, served outside the prescribed statute of limitation period, to relate back to the filing of the original complaint.

In this respect, Plaintiff submits that Rules 15(c) and 4(m) serve analogous purposes, that being, to avoid travesties of justice by allowing plaintiffs who have failed to comply with the strictures of a legally mandated procedural requirement to avoid the punitive consequences of that failure by granting appropriate interim relief. As such, an interpretation and enforcement of one should be allowed to inform the other.

Plaintiff request is neither new nor ridiculous. As a matter of fact, the Second Circuit granted this exact relief to Manual Soto, in the case of <u>Soto v. Brooklyn Correctional Facility</u>, No. 94-2152, ____ F. 3d ____, (2nd Cir. 1996). In doing so, the Second Circuit held as follows:

> "<u>Mistake</u> . For Soto's amended complaint to relate back to the date of his original complaint he must show that he failed to name the individual officers **due to a "mistake concerning the identity of the proper party."** Fed. R. Civ. P. 15(c)(3)(B). This phrasing of the "mistake" criterion was introduced in the 1966 amendment to Rule 15. According to the Advisory Committee Note accompanying the 1966 amendment, the language was prompted by several cases in which plaintiffs, unaware of the technical requirements of the law, mistakenly named institutional instead of individual defendants. <u>See Cohn v. Federal Security Administration</u> , 199 F. Supp. 884 (W.D.N.Y. 1961); <u>Hall v.</u>

<u>Department of Health, Education and Welfare</u>, 199 F. Supp. 833 (S.D. Tex. 1960); <u>Cunningham v. United States</u>, 199 F. Supp. 541 (W.D. Mo. 1958). ... ***The amendment was expressly intended to preserve legitimate suits despite such mistakes of law at the pleading stage.***
▶▶

Courts in other jurisdictions have held that "'mistake' as used in Rule 15(c) applies to mistakes of law as well as fact." <u>Woods v. Indiana University-Purdue University</u>, 996 F.2d 880, 887 (7th Cir. 1993)."

Hence, Plaintiff submits that the preservation of legitimate lawsuits should, likewise, be a primary purpose underlying Rule 4(m); especially where , as here, the facts clearly show that allowing Plaintiff additional time would not prejudice defendants, in the least.

Respecting Plaintiff's "good faith" pleading argument, Plaintiff submits more than any other reason that motivated his decision not to name defendants Cioffi and Robinson in their individual capacities was his desire to take a balanced and reasoned approach to the allegations and claims that he asserted in his complaint. Indeed, this is the very essence of judicial responsibility on the part of a party and it's what Rule 11, FRCP attempt to exact with sanctions. To now punish Plaintiff for doing what Rule 11 mandates would indeed be a travesty of justice.

Finally, having found no precedent to the contrary, plaintiff submits that the foregoing reasons constitutes good cause within the meaning of Rule 4(m) and, as such, the court is required to grant Plaintiff additional time to perfect jurisdiction over these defendants in their personal capacities.

In the alternative, and in reliance of the Seventh Circuit, Court of Appeals, decision in <u>Panaras v. Liquid Carbonic Industries Corporation</u>, et al, _____F3d

_____, (1996), plaintiff submits that even if the foregoing facts do not constitute 'good cause' of the type contemplated by Rule 4(m), this court is nonetheless required to consider:

> "...whether a permissive extension of time for service [is] warranted under the facts of this case."

Here, Plaintiff submits that the following reasons justify this court holding that a permissive extension of time to serve the complaint and summons [is] warranted under the facts of this case. These facts are:

First, this is a proceeding in equity where, oftentimes the courts overlooks technical requirements in pursuit of justice; especially where, as here, doing so would not prejudice defendants in the least;

Second, in this spirit, this court has twice refused to entertain and removed from the docket entries, plaintiff's contentions that defendants were in default due to their failure to timely Answer Plaintiff's attempts to file a First and Second Amended Complaint. (See: Defendants' Exhibit #1, Civil Docket Entry Sheet for Case #3:02-cv-00223-CFD);

Third, plaintiff labored under a genuine mistake of law as to his ability to maintain these individuals as parties to the lawsuit by merely naming them in their official capacities; despite the preclusive effect of sovereign and Eleventh Amendment immunity on such an effort and immediately upon learning of his mistaken error of law, Plaintiff amended his complaint to name these individuals in their official capacities;

Fourth, as of the time plaintiff amended his complaint and named these individuals in their personal capacities, this court had authorized defendants to proceed with the filing of a Motion for Partial Summary Judgment and defendants had indicated their intent to raise this and related issues, as such plaintiff may have mistakenly came to the belief that it was appropriate to await perfecting (and incurring the cost of perfecting) personal service on these individuals until after the ruled on defendants' Motion for Partial Summary Judgment;

Fifth, if the court failed to grant Plaintiff's request for additional time, any attempt on Plaintiff's behalf to re-file the complaint against these

individual would be barred by the statute of limitation which would result in Plaintiff being punished for attempting to show procedural constraint as opposed to being rewarded; and

Seventh, Plaintiff is preceding pro se and equity requires the court to give him the benefit of the doubt; especially when to do so would prejudice defendants in any way.

plaintiff submits that the foregoing reasons clearly establish that it would be a travesty of justice for this court to dismiss plaintiff's complaint against these defendants in their individuals capacities, **with or without prejudice,** due to plaintiff having failed to perfect personal service over these defendants because the consequence of such a dismissal would be to shield these defendants from all liability for discriminatory conduct that they engaged in their individual capacities.

It was due to this exact reason that the Seventh Circuit cautioned the trial court(s) to give grave consideration to the running of the statute of limitation, when adjudicating a Rule 4(m) request for an extension of time. Specifically, the court held:

> The running of the statute of limitations does not require that a district court extend the time for service of process under the new rule. Petrucelli, 46 F.3d at 1306. Rather, absent a finding of good cause, a district court may in its discretion still dismiss a case even after con sidering that the statute of limitations has run. But because the statute of limitations (an extremely short one here) would bar a new complaint in this case (absent some sort of "relation back" theory applied to a new suit), it was incumbent upon the district court to fully consider this factor. When, as here, a lawyer has not waited until the end of a more generous statute of limitations before getting a suit going--the situation in Tuke--the fact that the suit cannot be resolved on the merits is a factor that must be given close attention.

For the foregoing reasons, plaintiff submits that he should be allowed additional time to serve his complaint upon defendants Waters, Ryan, Robinson and Cioffi.

### THE FEBRUARY 10, 2005 AMENDED COMPLAINT THAT PLAINTIFF SERVED UPON DEFENDANTS ROBINSON AND CIOFFI[6] IS NOT BARRED BY THE APPLICABLE STATUTE OF LIMITATION INASMUCH AS IT RELATED BACK TO THE DATE OF FILING OF PLAINTIFF'S ORIGINAL COMPLAINT IN ACCORDANCE WITH RULE 15(C)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Defendants contend that Plaintiff's February 10, 2005 attempt to sue defendants Cioffi and Robinson in their individual capacities is barred by the statute of limitation because they were neither sued nor served in their individual capacities with the applicable three year statute of limitation period. Plaintiff concedes the correctness of defendants' factual contentions but submit that defendants are operating under a gross mistaken view of the applicable law.

In this respect, the timeliness of Plaintiff's February 10, 2005 amended complaint is governed by Federal Rule of Civil Procedure 15(c)(2) which insofar as pertinent provides:

> "(c) Relation Back of Amendment. An amendment of a pleading relates back to the date of the original pleading when: ...
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, ... . "

---

[6] Plaintiff submits that by not briefing or arguing their statute of limitation argument with respect to defendants Ryan and Waters, that defendants have, as a matter of law, failed to establish that there exist no genuine issues of material fact respecting the status of these defendants under FRCP 15(c) and, as such, their Motion for Summary Judgment respecting these defendants and this issue must be denied. See: Adickes and Coletex, supra.

Defendants concede as they must that the only difference in the claim that plaintiff asserted against Cioffi and Robinson is the contention that they are sued in their individual capacities. Hence, Plaintiff submits that, as a matter of law, the February 10, 2005 complaint is not barred by the statute of limitation but rather relates back to the date of the filing of the original complaint.

## CONCLUSION

IN CONCLUSION, as a result of the foregoing facts, Plaintiff submits that except as conceded in his accompanying Motion in Opposition to Defendants' Motion for Partial Summary Judgment, Defendants' Motion should be denied.

Respectfully Submitted

Jewel E. Brown,
By:

Jewel E. Brown, Pro-se
21 BREWSTER
SOUTH WINDSOR, CT. 06074
PHONE (860) 644-5379
FAX (860)-644-6551
E-MAIL: employmentpa@aol.com

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that he has caused a copy of the foregoing pleading to be served upon Defendants' Attorneys this 1st day of July 2005 by depositing a copy of the same in U. S. mail, postage prepaid, and addressed to Defendants' Attorneys' address shown of record in this matter.

Respectfully submitted,

By:
Jewel E. Brown, Pro se